Gladys BANKS, Appellant,

v.

**CHESAPEAKE AND POTOMAC TELEPHONE COMPANY.**

No. 84–5830.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1986.

Decided Sept. 5, 1986.

As Amended Sept. 17, and Oct. 20, 1986.

Mercer Gordon Anderson, Washington, D.C., for appellant.

R. Michael Smith, Washington, D.C., for appellee.

Before WALD, Chief Judge, BUCKLEY, Circuit Judge, and WRIGHT, Senior Circuit Judge.

Opinion for the court filed by Senior Circuit Judge WRIGHT, in which Chief Judge WALD concurs.

Opinion concurring in the result filed by Circuit Judge BUCKLEY.

J. SKELLY WRIGHT, Senior Circuit Judge:

In this case we must decide whether the District of Columbia's one-year or three-year statute of limitations applies to claims brought in the District of Columbia under 42 U.S.C. § 1981 (1982). Appellant Gladys Banks brought this suit against her former employer alleging race and sex discrimination three years and one day after the last alleged discriminatory act occurred. The district court dismissed the suit, holding that appellant's suit was barred even under the more generous statute of limitations.

We conclude that the three-year statute of limitations applicable to personal injuries suits controls actions brought under § 1981 in the District of Columbia. Moreover, because the last day of the limitations period in this case fell on Sunday, the statute of limitations was extended an additional day and appellant's suit was therefore filed within the three-year statute. Because appellant failed to proffer sufficient evidentiary support for the allegations of her complaint, however, we affirm the grant of summary judgment in favor of appellee.

## I. BACKGROUND

Appellant Gladys Banks was employed from 1970 to 1978 by appellee Chesapeake & Potomac Telephone Company of the District of Columbia (C&P of D.C.) as a directory assistance operator. She was transferred during the summer of 1978 to the Chesapeake & Potomac Telephone Company of Virginia (C&P of Virginia).[1] Almost two years after the transfer, on March 27, 1980, appellant became ill and began an absence that lasted over a year. During appellant's illness C&P of Virginia paid her disability benefits as provided for under its disability plan. Under the terms of the plan employees unable to return to work after receiving benefits for a year would be terminated. When Ms. Banks failed to report to work on March 31, 1981,

the company terminated her on the following day, April 1, 1981.

After efforts to gain reinstatement, appellant filed this suit against C&P on April 2, 1984. Her complaint alleged violations of Title VII, 42 U.S.C. § 2000e *et seq.* (1982), and of the federal civil rights statutes, 42 U.S.C. §§ 1981, 1983 (1982). She claimed that the company had discriminated against her on the basis of race and sex in her training, transfers, evaluations, suspensions, termination, protection of her personal records, and administration of her benefit plan, and that the company had discriminatorily harassed her. Appellant sought damages as well as declaratory and injunctive relief. *See* Appendix (App.), Vol. II at 1–4 (Complaint).

C&P of D.C. answered appellant's complaint by denying the allegations, arguing that in any event it was not legally responsible for the acts of C&P of *Virginia*, and by raising several affirmative defenses, including the statute of limitations. *See* App., Vol. II at 5–9 (Answer). After the parties stipulated to the dismissal of appellant's Title VII claims, appellee filed a motion for summary judgment together with supporting affidavits, claiming that appellant's suit was barred by the statute of limitations.

The district court granted the motion and dismissed the action. *See* Brief and Appendix for Appellant at 46 (Memorandum Opinion and Order filed October 23, 1984). The court first noted that § 1981 provides no remedy for *sex* discrimination. Moreover, the court noted, § 1983 applies only to actions taken under color of law and consequently cannot provide a remedy against private employers such as C&P. Thus the only colorable claim remaining was appellant's race discrimination claim under § 1981, which the court concluded was time-barred. The court reasoned that because appellant was terminated on April 1, 1981 and did not file this suit until April 2, 1984, the claim was time-barred even under

1. These two companies are separate corporations. At the time they were wholly-owned subsidiaries of the American Telephone &

Telegraph Company. They are now wholly-owned subsidiaries of the Bell Atlantic Corporation.

the District of Columbia three-year statute of limitations for personal injury actions. Consequently, it dismissed appellant's suit.

## II. STATUTES OF LIMITATIONS

Appellant challenges the dismissal of her race-based § 1981 claim.[2] She argues that the district court erred in concluding the claim was time-barred under the three-year statute of limitations applicable to personal injury actions brought in the District of Columbia. Because the last day of the three-year period fell on a Sunday, she argues, the statute of limitations was extended an extra day. Consequently her complaint was timely filed and should not have been dismissed.

█ We agree. Federal Rule of Civil Procedure 6(a) directs a federal court, in calculating any time period prescribed by any applicable statute, to extend the period an additional day if the time period ends on a Saturday, a Sunday, or a legal holiday. *See also National Black Media Coalition v. FCC,* 760 F.2d 1297, 1299 n. 2 (D.C. Cir.1985). Similarly, under District of Columbia law the limitation period is tolled if

the last day falls on a Sunday. *See People's Counsel v. Public Serv. Comm'n of D.C.,* 451 A.2d 90, 91 (D.C.C.A.1982). Thus we conclude that the district court erred in finding that this suit would be time-barred under the three-year statute of limitations.[3] Because we conclude that appellant's suit, insofar as it challenged her *termination,*[4] was timely filed under the three-year statute, we must reach and resolve the issue left undecided by the district court (*i.e.,* whether the three-year or the one-year statute of limitations applies).

### A. *The Process of Selecting a Limitations Period:* Garcia

Federal civil rights statutes, such as § 1981[5] and § 1983, contain no statute of limitations. Rather, federal courts are guided in their determination of the appropriate statute of limitations to apply to federal civil rights actions by a companion statute, 42 U.S.C. § 1988 (1982). Section 1988 directs federal courts to examine federal law and, to the extent that federal law provides no applicable rule of decision, to examine state law.[6] The Supreme Court has described this as a three-step process:

---

2. Appellant has expressly declined to challenge the dismissal of her sex discrimination claim under § 1981 or the dismissal of her § 1983 claims. *See* Brief and Appendix for Appellant at 6 n. 14. Moreover, as noted above, the parties stipulated to the dismissal of the Title VII claims.

3. We note that the Supreme Court has instructed the federal courts to borrow state law tolling rules in the absence of a federal rule to calculate the appropriate limitation period under the federal civil rights statutes, so long as those rules are not inconsistent with federal policies. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *Chardon v. Fumero Soto,* 462 U.S. 650, 655–56, 103 S.Ct. 2611, 2615–16, 77 L.Ed.2d 74 (1982). Whether an inconsistent state tolling rule would overcome the command of Federal Rule 6(a) is an issue we need not address, given that in this case the federal and state rules are identical.

4. Appellant's claims based on her pre–1978 employment with C&P of D.C. are clearly time-barred under any of the possible statutes of limitations, as are her pre-termination claims arising from her employment with C&P of Virginia. Thus we consider her racial discrimi-

nation claim only insofar as it relates to her termination.

5. 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

6. 42 U.S.C. § 1988 provides, in part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the com-

First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." * * If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. * * * A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." * * *

*Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct 1938, 1942–43, 85 L.Ed.2d 254 (1985) (citations omitted). *See also Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928–2929, 82 L.Ed.2d 36 (1984). Thus courts are to look to state law for guidance if federal law provides no statute of limitations.[7]

Application of § 1988's "borrowing" principle, originally referred to as a search for the "most appropriate" or "most analogous" state statute of limitations, *see Board of Regents v. Tomanio,* 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express*

*Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), however, led to confusion over which state statute of limitations is "most analogous." The lower courts were confused as to whether the characterization of the claim was an issue of federal or state law and whether the characterization of the claim ought to turn on the particular facts of the case. *See Garcia,* 471 U.S. at 274 & n. 33, 105 S.Ct. at 1946 & n. 33; *Smith v. City of Pittsburgh,* 764 F.2d 188, 192–94 (3d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

The courts in this jurisdiction have also struggled with the issue of which statute of limitations applies to § 1981 claims.[8] This court held, in *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 994 (D.C. Cir.1973), that the District's three-year personal injury statute applied. After that case was decided, however, the District of Columbia enacted the District of Columbia Human Rights Act of 1978, D.C. Code § 1–2501 *et seq.* (1981). That statute is governed by a one-year statute of limitations. *See Davis v. Potomac Elec. Power Co.,* 449 A.2d 278, 281 (D.C.C.A.1982). The

---

mon law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause * * *.

Section 1988 is, of course, equally applicable to both § 1981 claims, *see, e.g., Runyon v. McCrary,* 427 U.S. 160, 180–82, 96 S.Ct. 2586, 2599–2600, 49 L.Ed.2d 415 (1976), and § 1983 claims. *See, e.g., Wilson v. Garcia,* 471 U.S. at 267, 105 S.Ct. at 1942–43.

7. Appellee's suggestion that we apply a "significant interest" analysis to determine whether the Virginia or the District of Columbia statute of limitations applies must be rejected. Congress has expressly directed the federal courts to refer to the *forum* state's law. *See* 42 U.S.C. § 1988. Moreover, the District of Columbia's choice of law rule dictates that the District of Columbia statute of limitations applies to suits brought in this jurisdiction. *See Hodge v. Southern Ry. Co.,* 415 A.2d 543, 544 (D.C.C.A.1980); *May Department Stores v. Devercelli,* 314 A.2d 767, 773 (D.C.C.A.1973).

8. Application of the problematic "most analogous" analysis to § 1981 claims was no less confused in other jurisdictions. *See generally Developments—Section 1981,* 15 Harv.C.R./C.L. L.Rev. 29, 222–35 (1980) (discussing the various state statutes of limitations applied to § 1981 claims). While some courts examined § 1981 claims on a case-by-case basis, *see, e.g., Jones v. Orleans Parish School Board,* 679 F.2d 32, 35–36 (5th Cir.), *modified on other grounds,* 688 F.2d 342 (5th Cir.1982), *cert. denied,* 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983), others applied the statute of limitations applicable to claims for liability created by statute, *see, e.g., Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 663–64 (9th Cir.1980). Still others applied contract limitation periods, *see, e.g., Boudreaux v. Baton Rouge Marine Contracting Co.,* 437 F.2d 1011, 1017 n. 16 (5th Cir.1971), or for personal injury claims. *See, e.g., Garcia v. University of Kansas,* 702 F.2d 849, 851 (10th Cir.1983). Finally, some courts applied the statute of limitations for all claims not otherwise provided for. *See, e.g., Teague v. Caterpillar Tractor Co.,* 566 F.2d 7, 8 (7th Cir.1977) (*per curiam* ).

authority in this jurisdiction is now split on which of the two statutes controls.[9]

Our resolution of these issues is guided by the Supreme Court's recent decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 1254 (1985). In that case a plaintiff brought a § 1983 claim against a police officer, alleging that he had been beaten by the defendant. 471 U.S. at 263, 105 S.Ct. at 1940. The district court refused to dismiss the suit on timeliness grounds, concluding that the claim was governed by the New Mexico statute of limitations that governed all claims not otherwise specifically provided for. On appeal, after exhaustively reviewing all of the ways in which § 1983 claims have been characterized by each of the federal circuits, the Tenth Circuit concluded that § 1983 claims were best characterized as personal injury claims. The Supreme Court affirmed.

■ The Court began its analysis by examining the borrowing principle of § 1988. The Court emphasized that the characterization of the federal claim is a matter of *federal* law. *Id.* at 270 & n. 22, 105 S.Ct. at 1944 & n. 22. Thus a particular state's characterization of a *federal* claim for purposes of determining which statute of limitations is applicable is not binding on a federal court.[10] *Id.*

The Court then analyzed the particular character of § 1983 claims. It noted that § 1983 provides a remedy for a broad range of injuries. *Id.* at 272–73, 105 S.Ct. at 1945–46. A single claim under § 1983 could be characterized as any one of a number of state causes of action. Allowing courts to select an appropriate statute of limitations "on an analysis of the particular facts of each claim * * * inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983." *Id.* at 272, 105 S.Ct. at 1945.

> The simplicity of the admonition in § 1988 is consistent with the assumption that Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers and litigants, rather than a source of uncertainty, and unproductive and ever increasing litigation. Moreover, the legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters.

*Id.* at 275, 105 S.Ct. at 1946–47 (footnote omitted). Consequently, the Court concluded that § 1988 "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations." *Id.* at 275, 105 S.Ct. at 1947.

The Court then turned to the Tenth Circuit's "exhaustive[ ] review[ ]," *id.*, of the different ways that § 1983 claims have been characterized by each of the federal circuits. The Court examined the historical context of the Civil Rights Act of 1871, noting the campaign of violence in the

**9.** *Compare Covert v. Washington Hilton Hotel,* 33 F.E.P. 660, 661 (D.D.C.1983) (3–year statute controls); *Jones v. Management Partnership, Inc.,* 32 F.E.P. 639, 641 (D.D.C.1983) (same); *Hughes v. C & P Telephone Co.,* 33 F.E.P. 1648, 1649 (D.D.C.1983) (same), *with Pender v. National R.R. Corp.,* 625 F.Supp. 252, 39 F.E.P. 1282, 1284 (D.D.C.1985) (1–year statute controls); *Blake v. American College of Obstetricians & Gynecologists,* 608 F.Supp. 1239, 37 F.E.P. 1349, 1352 (D.D.C.1985) (same); *Monroe v. United Air Lines,* 34 F.E.P. 1588 (N.D.Ill.1983) (same); *Lane v. American Airlines,* 34 F.E.P. 1579, 1580 (D.D.C.1983) (same).

Although this court noted *Macklin* with approval in *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 358 n. 1 (D.C.Cir.1982), the issue was not expressly considered in that case. *See also Fitzgerald v. Seamans,* 553 F.2d 220, 223 (D.C.Cir.1977) (citing *Macklin* with approval).

Thus the division in the lower courts reflects the uncertainty over whether *Macklin* remains good law.

**10.** This discussion re-emphasized the Court's recent explanation in *Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), that a statute of limitations represents a balancing of various factors, the most important being a defendant's need for repose and the government's interest in ensuring that statutory rights are vindicated. When borrowing a state limitations period, the Court admonished, a federal court cannot adopt the state's balancing of interests if the factors considered by the state "are inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Acts." *Id.* at 53, 104 S.Ct. at 2931. Rather, the federal court must conduct an independent balancing focusing on the federal interests at stake in civil rights laws.

South that motivated Congress to enact the statute. The Court also noted that the unifying theme of the Civil Rights Act was the Constitution's command that all persons be accorded the full privileges of citizenship and that no person be deprived of life, liberty, or property without due process of law or be denied the equal protection without due process of law or be denied the equal protection of the laws. "A violation of that command is an injury to the individual rights of the person." *Id.* at 277, 105 S.Ct. at 1948. Finally, the Court quoted the Fourth Circuit's opinion in *Almond v. Kent,* 459 F.2d 200, 204 (4th Cir.1972), to explain why this analogy is persuasive:

> In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'

471 U.S. at 278, 105 S.Ct. at 1948. Consequently, the Court concluded that § 1983 claims are most appropriately characterized as personal injury actions. *Id.* at 278, 105 S.Ct. at 1949.

B. *Application of* Garcia *to § 1981 Claims*

■ Although the Supreme Court has not considered whether the same statute of limitations should apply in § 1981 suits as in § 1983 suits, *see Burnett v. Grattan,* 468 U.S. 42, 48 n. 11, 104 S.Ct. 2924, 2929, n. 11, 82 L.Ed.2d 36 (1984), we find the reasoning of *Garcia* to be persuasive in this context as well. As an initial matter, it is clear that the same statutory directive applies to both types of claims. *See* 42 U.S.C. § 1988 (1982). Similarly, the Court's emphasis in *Garcia* on avoiding collateral litigation over the applicable statute of limitations is equally compelling here. Both

§ 1983 and § 1981 provide remedies for a broad range of actions that could be characterized as various state torts. Allowing the characterization to turn on the particular facts of a case presents the same threat of excessive collateral litigation. Thus the Court's conclusion that § 1988 "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations," *Garcia,* 471 U.S. at 275, 105 S.Ct. at 1947, is equally applicable here.

More importantly, we see no difference between the central objectives of § 1981 and § 1983—each a product of the Reconstruction Era [11]—for the purposes of applying *Garcia* to § 1981 claims. Both statutes were enacted "to ensure that individuals whose federal Constitutional or statutory rights are abridged [could] recover damages or secure injunctive relief." *Burnett,* 468 U.S. at 55, 104 S.Ct. at 2932. Section 1981, like § 1983, broadly protects the right of all persons "to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981 (1982). A violation of that command is a "personal injury" in very much the same sense as is a violation of § 1983. As the Court explained in *Garcia,*

> The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every *"person"* subject to the jurisdiction of any of the several States. The Constitution's command is that all *"persons"* shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or to be denied the equal protection of the laws. *A violation of that command is an injury to the individual rights of the person.*

471 U.S. at 277, 105 S.Ct. at 1948 (last emphasis added; footnote omitted). *See also Curtis v. Loether,* 415 U.S. 189, 196 n. 10, 94 S.Ct.

---

11. *See Garcia,* 471 U.S. at 276–77, 105 S.Ct. at 1947–48 (discussing purposes of § 1983); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 422–37, 88 S.Ct. 2186, 2194–2202, 20 L.Ed.2d 1189 (1967) (reviewing history and purposes of the Civil Rights Act of 1866, which included § 1981); *Monroe v. Pape,*

365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (discussing history and purpose of § 1983). *See generally* K. Stampp, The Era of Reconstruction, 1865–77 (1965); Gressman, *The Unhappy History of the Civil Rights Legislation,* 50 Mich.L.Rev. 1323 (1952).

1005, 1009 n. 10, 39 L.Ed.2d 260 (1974) (suggesting that racial discrimination be treated as a "dignitary tort"); *Developments—Section 1981*, 15 HARV. C.R./C.L. L.REV. 29, 224 (1980) (noting that some courts have characterized claims under § 1981 as "dignitary torts"). Indeed, it is significant to note that in reaching the conclusion that § 1983 claims are best characterized as "personal injury" claims, the Court cited two cases that held that § 1981 claims are also appropriately characterized as "personal injury" claims. *See Garcia*, 471 U.S. at 278 n. 38, 105 S.Ct. at 1948 n. 38 (*citing Runyon v. McCrary*, 427 U.S. 160, 179–82, 96 S.Ct. 2586, 2598–2600, 49 L.Ed.2d 415 (1966)); *McCausland v. Mason County Bd. of Educ.*, 649 F.2d 278, 279 (4th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981)).

Moreover, characterization of § 1981 claims as personal injury actions is far from unique. Indeed, before *Garcia,* courts frequently characterized claims brought under both statutes as personal injury claims. *See Runyon,* 427 U.S. at 182, 96 S.Ct. at 2600 (affirming reliance on personal injury statute of limitations in § 1981 claim and noting that "petitioners have not cited any Virginia court decision to the effect that the term 'personal injuries' in § 8–24 means only 'physical injuries'"); *Garcia v. University of Kansas,* 702 F.2d 849, 851 (10th Cir.1983) (applying statute for injury to the rights of another to both § 1981 and § 1983 claims); *Jones v. Orleans Parish School Bd.,* 679 F.2d 32, 36 (5th Cir.) (applying tort statute to §§ 1981 and 1983 claims for racial discrimination), *modified on other grounds,* 688 F.2d 342 (5th Cir.1982), *cert. denied,* 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983); *McCausland* (personal injury statute applied to § 1981 and § 1983 claims); *Movement for Opportunity & Equality v. General Motors Corp.,* 622 F.2d 1235, 1242–43 (7th Cir.1980) (Indiana personal injury statute applied to § 1981 claim; court noted that "the choice of a statute of limitations

under section 1981 (for discriminatory actions by private individuals) is essentially the choice to be made under 42 U.S.C. § 1983 (1976) (for discriminatory actions under color of state law)."); *Ingram v. Steven Robert Corp.,* 547 F.2d 1260, 1263 (5th Cir.1977) (applying "injury to the rights of another" statute of limitations to a § 1981 claim). Indeed, this very court has applied the District's personal injury statute to § 1981 claims. *See Macklin v. Spector Freight Systems, Inc.,* 478 F.2d at 994. Thus we conclude that characterization of § 1981 claims as personal injury actions is both appropriate and accurate.

Our conclusion is consistent with the result reached by other courts that have considered the issue. In *Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985), which similarly involved allegations of employment discrimination, the Third Circuit concluded that the *Garcia* analysis "appl[ies] equally to actions under § 1981." *Id.* at 119. Thus the court held that "the personal injury statute of limitations of the forum state supplies the most analogous statute of limitations for actions brought under § 1981." *Id.* at 120.[12] *See also Al-Khazraji v. Saint Francis College,* 784 F.2d 505, 511 (3d Cir.1986) (*Garcia* "made the *Goodman* decision *inevitable*") (emphasis added). Similarly, the Eleventh Circuit has indicated in dicta that the personal injury statute of limitations should apply to § 1981 claims. *See Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1503 n. 2 (11th Cir.1986). *See also Anderson v. University Health Center,* 623 F.Supp. 795, 796 (W.D.Pa.1985) ("[T]here is no reason why the same rule [applicable to § 1983 claims] should not apply to Section 1981 actions."); *Saldivar v. Cadena,* 622 F.Supp. 949, 958 (W.D.Wis. 1985) (applying statute applicable to actions for injuries to the character or "rights of another" to § 1981 claims). Indeed, the concurrence has cited not a single decision by a court outside this circuit that, in the

---

12. In reaching this conclusion the Third Circuit noted that "[a] substantial overlap exists in the types of claims brought under sections 1981 and 1983." *Goodman,* 777 F.2d at 120. Because of this overlap, applying different statutes of limitations to claims brought under the two statutes "would lead to a bizarre result." *Id.*

wake of *Garcia,* has applied a statute other than that applicable to personal injury claims to a § 1981 action.[13]

## C. *The Human Rights Act Statute of Limitations*

■ Appellee argues that this court should apply the one-year limitations period of the D.C. Human Rights Act to § 1981 claims, as several district courts have done. *See* note 8 *supra.* The concurring opinion argues that this statute of limitations is applicable not only to § 1981 claims, but possibly to § 1983 claims as well, even in light of *Garcia.* In our view, however, this statute is an inappropriate choice, and the concurrence's reading of *Garcia* ignores the plain holding of the Court's opinion.

In selecting the appropriate statute of limitations, this court must recognize the primacy of federal interests embodied in the civil rights statutes. When a state emphasizes different interests in a statute of limitations—such as the need for repose, judicial economy, or other state policy goals—by shortening the limitation period, a federal court cannot borrow that stat-

ute.[14] *Burnett,* 468 U.S. at 55, 104 S.Ct. at 2933. We cannot "borrow" D.C.'s Human Rights Act statute of limitations because we conclude that the Civil Rights Act's emphasis on providing relief to victims of discrimination is inconsistent with the District of Columbia's remedial scheme's emphasis on the need to minimize the diversion of state officials' attention by shortening limitation periods. *Compare Burnett,* 468 U.S. at 55, 104 S.Ct. at 2933 (policy of minimizing diversion of state officials' attention is "manifestly inconsistent with the central objective of the Reconstruction-Era civil rights statutes"), *with Davis v. Potomac Elec. Power Co.,* 449 A.2d 278, 281 (D.C.C.A.1982) (stressing importance of such issues to the interpretation of the D.C. Human Rights Act). Because the District's Human Rights Act emphasizes interests that are "inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Act," *Burnett,* 468 U.S. at 53, 104 S.Ct. at 2931, it would be inappropriate to borrow that Act's one-year statute of limitations to govern federal civil rights actions.[15] By contrast, as the Supreme Court noted in *Garcia,* it is unlikely that a

---

**13.** Although the United States District Court for the District of the Virgin Islands adopted an analysis similar to the concurrence's analysis in *Harrigan v. Sebastian's on the Waterfront, Inc.,* 629 F.Supp. 102 (D.V.I.1985), that court concluded that "42 U.S.C. § 1981 was designed to protect economic rights. * * * It follows, therefore, that Section 1981 is best governed by the statute of limitations applicable to contract actions." *Id.* at 105. This approach, as noted above, was rejected by the Third Circuit, governing that district court, in *Goodman.*

**14.** We do not suggest that "repose is inconsistent with the policy of the federal civil rights laws," concurring op. at 1442. As noted above, a statute of limitations represents a balancing of a defendant's need for repose and the government's interest in vindicating statutory and constitutional rights. *See* note 10 *supra.* That balancing of interests might tip in either direction. As the Court in *Garcia* noted, a federal cause of action at " 'any distance of time' would be 'utterly repugnant to the genius of our laws.' " 471 U.S. at 271, 105 S.Ct. at 1944 (citation omitted). At the same time, however, the government's interest in vindicating statutory or constitutional rights cannot be ignored. The *Garcia* Court stated,

[T]he application of *any* statute of limitations would promote repose. By adopting the stat-

ute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action.

*Id.* at 271, 105 S.Ct. at 1945 (emphasis in original). However, the Court specifically cautioned federal courts borrowing state statutes of limitations for the federal civil rights acts that

the length of a limitations period will be influenced by the legislature's determination of the importance of the underlying state claims, the need for repose for potential defendants, considerations of judicial or administrative economy, and the relationship to other state policy goals. *To the extent that particular state concerns are inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Acts, the resulting state statute of limitations may be inappropriate for civil rights claims.*

*Burnett,* 468 U.S. at 53, 104 S.Ct. at 2931 (emphasis added).

**15.** Many states have Human Rights Acts similar to the D.C. Human Rights Act. *See, e.g.,* Ariz. Rev.Stat.Ann. § 41–1401 *et seq.* (1956 & Supp. 1986) (Arizona Civil Rights Act); Ill.Rev.Stat. Ch. 68, § 1–101 *et seq.* (1972 & Supp.1986) (Illi-

state's personal injury statute would similarly "discriminate against federal claims, or be inconsistent with federal law in any respect." 471 U.S. at 279, 105 S.Ct. at 1949.[16]

Moreover, although the Human Rights Act prohibits discrimination in certain decisions, *e.g.*, D.C. Code § 1–2512 (employment), § 1–2515 (real estate transactions), § 1–2519 (public accommodations), § 1–2520 (educational decisions), it does not apply to many forms of discrimination remediable under § 1981. *See, e.g., Georgia v. Rachel,* 384 U.S. 780, 798, 86 S.Ct. 1783, 1793, 16 L.Ed.2d 925 (1965) (§ 1981 guarantees a defendant the right to a jury selected without racial discrimination) (dicta) (*citing Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 312, 25 L.Ed. 664 (1879) );

*Jennings v. American Postal Workers Union,* 672 F.2d 712, 716 (8th Cir.1982) (§ 1981 provides remedy against union for racial discrimination in union's processing of plaintiff's grievance); *Bell v. Southwell,* 376 F.2d 659, 664 (5th Cir.1967) (Civil Rights Acts, including § 1981, provide remedy for racial discrimination in Georgia election procedures). Consequently, we conclude that the District's three-year personal injury statute of limitations, rather than the Human Rights Act limitations period, should apply to § 1981 claims.

Our conclusion is also supported by our reading of *Garcia.* A perusal of the Court's opinion leaves no doubt that the Court intended in all cases to require application of a state's "personal injury" statute of limitations to claims brought under

nois Human Rights Act); Iowa Code Ann. § 601A.1 *et seq.* (1975 & Supp.1986) (Iowa Civil Rights Act of 1965); N.Y. Executive Law § 290 *et seq.* (1951 & Supp.1986) (New York Human Rights Act); Ohio Rev.Code Ann. § 4112.01 *et seq.* (1953 & Supp.1986) (Ohio Civil Rights Act). In *Burnett,* the Court considered the question whether the limitations period provided by such statutes should be borrowed for federal civil rights actions. The Court concluded that they should not, reasoning that such schemes applied to administrative complaints and often imposed short limitations periods emphasizing interests that are inconsistent with the federal civil rights acts.

The concurring opinion distinguishes *Burnett* by noting that the D.C. Human Rights Act's one-year statute of limitations applies equally to judicial actions under that statute and provides a relatively generous one-year period. We are unconvinced that this distinction makes the D.C. Human Rights Act applicable to federal civil rights claims. Although the concurrence notes that some courts have upheld one-year statutes as applied to civil rights claims, *see* concurring op. at 1442, other courts have rejected such periods as unduly short. *See Pauk v. Board of Trustees,* 654 F.2d 856, 862 (2d Cir.1981) (rejecting applicability of one-year-ninety-day statute of limitations to § 1983 claims), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), *cited with approval in Burnett,* 468 U.S. at 55 n.18, 104 S.Ct. at 2932 n. 18; *Saunders v. State of New York,* 629 F.Supp. 1067, 1070 (N.D. N.Y.1986). Moreover, even in New York, which applies the limitations period for causes of action arising under statute to its own human rights law, *see Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86, 93 (Ct.App.1983), the courts have insisted on the application of the general per-

sonal injury limitation period for § 1983 claims. *See Villante v. Department of Corrections of City of New York,* 786 F.2d 516, 520 n.2 (2d Cir.1986) (dicta) (general personal injury tort limitation should be applied to § 1983 claims); *Okure v. Owens,* 625 F.Supp. 1568, 1570 (N.D.N.Y.1986) (applying general limitation period to § 1983 claim); *Williams v. Allen,* 616 F.Supp. 653, 655 (E.D.N.Y.1985) (same); *Ladson v. New York City Police Dep't,* 614 F.Supp. 878, 879 (S.D.N.Y. 1985); *Rodrigues v. Village of Larchmont,* 608 F.Supp. 467, 476–77 (S.D.N.Y.1985) (same). *See also Martin v. City of New York,* 627 F.Supp. 892, 900 (E.D.N.Y.1985) (applying general personal injury tort limitation to § 1985 claim). Granted, as the concurring opinion observes, *see* concurring op. at 1441 n. 8, the limitations period for actions arising under statute and the limitation period for general personal injury torts are both three years in New York. Nevertheless, the federal courts in that state have consistently held that the personal injury limitations period is the statute of limitations applicable to § 1983 actions. This court must take them at their word.

**16.** Our decision not to adopt the Human Rights Act limitations period implies neither "bad faith" on the part of the D.C. government nor an assumption that the Act is not "a legitimate piece of local antidiscrimination legislation." *See* concurring op. at 1441. It simply reflects the Supreme Court's admonition that the borrowing of limitations periods under § 1988 is purely a matter of federal law and does *not* involve "policies of comity and federalism" that are involved in borrowing limitations periods in diversity cases. *Mazzanti v. Merck & Co.,* 770 F.2d 34, 36 (3d Cir.1985) (distinguishing *Garcia* in a diversity case). *Cf.* concurring op. at 1442.

§ 1983. The Court's opinion is replete with restatements of its holding. *See, e.g.,* 471 U.S. at 272, 105 S.Ct. at 1945 ("practical considerations help to explain why a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose"); *id.* at 278, 105 S.Ct. at 1948 ("Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights."); *id.* at 279, 105 S.Ct. at 1949 ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983."); *id.* at 280, 105 S.Ct. at 1949 ("§ 1983 claims are best characterized as personal injury actions").[17]

Not surprisingly, courts considering § 1983 claims in the wake of *Garcia* have uniformly eschewed analysis of whether the particular claim involved or claims brought under the statute generally might best be characterized as one or another state cause of action. Rather, courts have consistently recognized that *Garcia* mandates, as a matter of federal law, that state personal injury statutes of limitations ap-

ply to § 1983 claims.[18] The concurrence nevertheless reads *Garcia* to leave open the possibility that "the analogy between section 1983 and [a] local civil rights law [might be] sufficiently strong to permit adoption of the state civil rights statute of limitations in the section 1983 context." Concurring op. at 1441 n. 7. This analysis suggests that courts may remain free to consider *any* potentially analogous state causes of action for which New Mexico, the state at issue in *Garcia*, had no special limitations period.[19] Because New Mexico did not have a state Human Rights Act statute of limitations similar to that of the D.C. Human Rights Act, the reasoning goes, we can still apply the D.C. Human Rights Act to this case as the "most analogous" statute of limitations.

It appears clear, however, that the Court's discussion was intended to encompass all of the possible characterizations of § 1983 claims under any state law. Indeed, the Court began its discussion of this issue by noting:

> *After exhaustively reviewing the different ways that § 1983 claims have been characterized in every Federal*

---

**17.** *See also Springfield Township School Dist. v. Knoll,* 471 U.S. 288, S.Ct. 2065, 85 L.Ed.2d 275 (1985) (*per curiam*) (remanded in light of *Garcia* "in which we have held that all § 1983 claims should be characterized for statute of limitations purposes as actions to recover damages for injuries to the person"); *Anton v. Lehpamer,* 787 F.2d 1141, 1143 (7th Cir.1986) (*Garcia* held that "*in every state* the statute of limitations for the 'tort action for the recovery of damages for personal injuries is the best alternative available'") (emphasis added); *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986) (*Garcia* held that § 1983 claims "should be *invariably* characterized as personal injury actions") (emphasis added).

**18.** *See Rivera v. Green,* 775 F.2d 1381, 1383 (9th Cir.1985) (personal injury statute governs § 1983 claims); *Wycoff v. Menke,* 773 F.2d 983, 984 (8th Cir.1985) (same); *Gates v. Spinks,* 771 F.2d 916, 918 (5th Cir.1985) (same); *Altair Corp. v. Pesquera de Busquets,* 769 F.2d 30, 31 (1st Cir.1985) (same); *Smith v. City of Chicago,* 769 F.2d 408, 411 (7th Cir.1985) (same) (dicta); *Bailey v. Faulkner,* 765 F.2d 102, 103 (7th Cir.1985) (same); *Smith v. City of Pittsburgh,* 764 F.2d 188, 192–94 (3d Cir.) (same), *cert. denied,* —— U.S. ——, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985); *Burkhart v. Randles,* 764 F.2d 1196, 1200 n. 5

(6th Cir.1985) (same); *Jones v. Preuit & Mauldin,* 763 F.2d 1250, 1253 (11th Cir.1985) (same), *cert. denied,* —— U.S. ——, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986). *Cf. Garcia v. Wilson,* 731 F.2d 640, 650–51 (10th Cir.1984), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

**19.** In fact, New Mexico has no separate limitations periods for liability based on a statute, or for false arrest or assault and battery claims. *See* N.M.Stat.Ann. Ch. 37, Art. I (1978). Thus the Court's analysis of the various alternative characterizations, which settled upon the general personal injury analogy, must have been intended to encompass all of the possible alternatives. Despite this, the concurring opinion, relying on *Runyon,* argues that the courts may consider potentially analogous limitations periods that apply to state human rights laws. Concurring op. at 1439 n. 5. But the concurrence's line of reasoning, based on a single phrase from that case, is not easily limited to so restricted a result. It seems a minor step from consideration of human rights law limitation periods alone to consideration of limitations periods for all causes of action for which New Mexico had no special period.

*Circuit,* the Court of Appeals concluded that the tort action for the recovery of damages for personal injuries is the best alternative available. * * * We agree that this choice is supported by the nature of the § 1983 remedy, and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy.

*See* 471 U.S. at 276, 105 S.Ct. at 1947 (emphasis added; citation omitted). Moreover, our conclusion that the *Garcia* Court intended its holding to apply to all § 1983 claims brought in every state is bolstered by the fact that the Court discussed and rejected the application of "catchall periods of limitations for statutory claims that were later enacted by many States." *Id.* at 278, 105 S.Ct. at 1948. New Mexico, however, has no statute of limitations applicable to claims for liability created by statute. *See generally* N.M.Stat.Ann. Ch. 37, Art. I (1978) ("Limitations of Actions"); *Garcia v. Wilson,* 731 F.2d 640, 651 (10th Cir.1984) ("Because there is no New Mexico statute governing actions on a liability created by statute, the court applied the four-year residual limitations period found in N.M.Stat.Ann. § 37–1–4 (1978)."), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Thus, by discussing the possibility that a § 1983 claim might be characterized as an action for liability created by statute, the Court indicated that it, like the Tenth Circuit, was considering all of the potential characterizations for § 1983 claims in any state.

Moreover, as an examination of our sister circuits' application of *Garcia* reveals, no other court has adopted the concurring opinion's narrow reading of *Garcia.* Prior to *Garcia,* the Second and Ninth Circuits were of the view that § 1983 claims were "most analogous" to claims for liability created by statute. Accordingly, in both of these circuits the court adopted that statute of limitations applicable to such claims. *See Pauk v. Board of Trustees,* 654 F.2d 856, 866 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Clark v. Musick,* 623 F.2d 89, 92 (9th Cir.1980). As noted above, however,

New Mexico has no statute of limitations applicable to claims for liability created by statute. Under the concurrence's narrow reading of *Garcia,* therefore, these circuits not only could have, but should have, followed their prior conclusion that § 1983 claims are most analogous to claims for liability created by statute. Neither of the circuits has done so, however. On the contrary, both have read *Garcia* to control the characterization of § 1983 claims and have rejected their prior holdings. *See Villante v. Department of Corrections of City of New York,* 786 F.2d 516, 520 n. 2 (2d Cir. 1986) (dicta); *Marks v. Parra,* 785 F.2d 1419, 1419–20 (9th Cir.1986). Indeed, in light of the Court's explicit rejection of such limitations periods, it would be difficult to argue otherwise. Accordingly, because we find no "exception" to *Garcia*'s holding and because we find that holding equally applicable to § 1981 claims, we conclude that § 1981 claims brought in the District of Columbia should be governed by the District's personal injury statute of limitations.

### D. The "Intentional" Torts Limitations Period

Although neither party raised the point, the concurring opinion notes that the D.C. Code contains two statutes of limitations applicable to personal injury claims. The first provides a one-year limitations period for several enumerated torts. *See* D.C. Code § 12–301(4) (applicable to actions for "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment"). The second, D.C.Code § 12–301(8), provides a three-year limitations period for all claims not otherwise provided for. With the exception of the enumerated intentional torts, all other claims for personal injuries, intentional and nonintentional, are governed by § 301(8). *See Lawrence v. Acree,* 665 F.2d 1319, 1323 n. 5 (D.C.Cir.1981); *Habib v. Raytheon Co.,* 616 F.2d 1204, 1208 (D.C. Cir.1980) (dicta); *Alley v. Dodge Hotel,* 501 F.2d 880, 882 n. 3 (D.C.Cir.1974). The parties apparently assumed that were we to

conclude that the D.C. "personal injury" statute of limitations applies to § 1981 claims, we would follow *Macklin* and borrow § 301(8) to provide the appropriate "personal injury" limitation period. The concurring opinion, however, argues that § 301(4) is the correct statute of limitations.

 Unlike in the case of jurisdictional questions, the court need not raise statute of limitations issues *sua sponte*. Reliance on a statute of limitations is an affirmative defense and is waived if a party does not raise it in a timely fashion. Fed.R.Civ.P. 8(c); *Lopez v. Rodriguez*, 668 F.2d 1376, 1378–79 n. 4 (D.C.Cir.1981); *Gabauer v. Woodcock*, 594 F.2d 662, 665 (8th Cir.1979). C&P has not cited § 301(4) in any of its pleadings or briefs and has thereby waived this particular defense. We consider the issue in dicta only, and only in order to answer Judge Buckley's discussion of the question in his concurrence.

There appears to be a growing split in the circuits as to whether general tort statutes of limitations or intentional tort limitations should apply to § 1983. While several courts have concluded that the specific intentional tort statute of limitations controls § 1983 claims, *see Mulligan v. Hazard*, 777 F.2d 340, 344 (6th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); *Gates v. Spinks*, 771 F.2d 916, 920 (5th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986); *Jones v. Preuit & Mauldin*, 763 F.2d 1250, 1255 (5th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986), several other courts have reached the opposite conclusion. *See Mismash v. Murray City*, 730 F.2d 1366, 1370 (10th Cir.1984) *(en banc)*, *cert. denied*, 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985); *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 2111,

85 L.Ed.2d 476 (1985); *Greenfield v. District of Columbia*, 623 F.Supp. 47, 48 (D.D.C. 1985). *Cf. Saldivar v. Cadena*, 622 F.Supp. 949, 955 (W.D.Wis.1985).[20]

The application of *Garcia* to a § 1983 claim in a jurisdiction that has two "personal injury" statutes of limitations is not directly before the court. We note, however, that the Court in *Garcia* did not rest its conclusion that § 1983 claims were best characterized as personal injury claims on the ground that the statute was intended merely to provide a remedy for physical violence. Rather, the Court also emphasized that violations of the Fourteenth Amendment's antidiscrimination command are injuries "to the individual rights of the *person.*" 471 U.S. at 277, 105 S.Ct. at 1948 (emphasis added). *See also Curtis v. Loether*, 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 (1974) (suggesting that actions to redress racial discrimination should be treated as "dignity torts") *(citing* C. GREGORY & H. KALVEN, CASES AND MATERIALS ON TORTS 961 (2d ed. 1969)). Thus we might well conclude, if directly confronted with the question, that § 301(8) should control claims brought under § 1983.

On this point it is instructive to compare the analysis adopted by the courts in the Second Circuit in applying New York law. Like the District of Columbia, New York has a statute of limitations governing several specific intentional torts, *see* N.Y.Civ. Prac.Law § 215(3) (McKinney Supp.1986) (one year), and another governing all other personal injury tort actions, *id.* at § 214(5) (three years). Nonetheless, each court in New York that has considered the issue has concluded that the general tort statute of limitations should be applied to § 1983 actions. *See, e.g., Villante v. Department of Corrections of City of New York*, 786 F.2d at 520 n. 2 (dicta); *Okure v. Owens*, 625 F.Supp. 1568, 1570 (N.D.N.Y.1986); *Williams v. Allen*, 616 F.Supp. 653, 655

---

20. *See also Mulligan v. Hazard*, — U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986) (White, J., with Marshall, J., dissenting from denial of certiorari) ("[T]he courts of appeals also have reached conflicting results concerning what should be done when more than one state statute of limitations applies to personal injury actions."); *Preuit & Mauldin v. Jones*, — U.S. ——, ——, 106 S.Ct. 893, 894–95, 88 L.Ed.2d 926 (1986) (White, J., dissenting from denial of certiorari) (noting split in the circuits on this issue).

(E.D.N.Y.1985); *Ladson v. New York City Police Dep't,* 614 F.Supp. 878, 879 (S.D. N.Y.1985); *Rodrigues v. Village of Larchmont,* 608 F.Supp. 467, 476–77 (S.D.N.Y. 1985). *Cf. Martin v. City of New York,* 627 F.Supp. 892, 900 (E.D.N.Y.1985) (applying the three-year statute to a § 1985 claim).

The case before the court, however, involves § 1981, not § 1983. Even if we were to agree with those courts that have concluded that the intentional tort statute should be applied to § 1983 claims, it is far from clear that the same analysis should apply in a § 1981 suit. Like § 1983, § 1981 is best characterized as a remedy for personal injury torts, *see* text *supra* at 1421–22, but unlike § 1983, it was *not* designed to provide a remedy for intentional torts such as assaults or batteries. Rather, § 1981 primarily ensures equal rights to make and enforce contracts, equal access to judicial process, and equal rights under law. *See* 42 U.S.C. § 1981. Even though claims for violation of these rights are personal injury claims, they cannot accurately be characterized as intentional tort claims of the sort enumerated in § 301(4). Thus it would be inappropriate to apply the one-year intentional tort statute to § 1981 claims.[21]

This court has already found, in *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979 (D.C. Cir.1973), that the three-year limitation period set out in § 301(8) is the most appropriate period for § 1981 claims. Although the Supreme Court's *Garcia* decision does require that we re-examine the

*Macklin* finding, we see nothing in *Garcia* that conflicts with *Macklin.* Unlike cases in other circuits whose case-by-case approach to statutes of limitations for § 1983 actions has been changed in response to *Garcia, see Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985); *Gates v. Spinks,* 771 F.2d 916 (5th Cir.1985), our *Macklin* decision arrived at a *single* statute of limitations to be applied to § 1981 cases *in general.* 478 F.2d at 994. This is precisely the approach mandated by the Supreme Court to avoid unnecessary and costly litigation of collateral matters in civil rights cases. *Garcia,* 471 U.S. at 275, 105 S.Ct. at 1946–47. We see no principle enunciated in *Garcia* that alters our finding in *Macklin* or that requires or suggests adoption of the intentional tort statute of limitations set out in D.C. Code § 12–301(4).

The *Macklin* opinion did not explicitly consider whether § 301(4)'s one-year limitations period might apply to § 1981 cases. In fact, this court has never ruled directly on the applicability of § 301(4) to either § 1981 or § 1983. This circuit has evaluated the one-year limitations period, however, as applied to *Bivens (Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) and § 1985(3) actions. In *Bivens* actions this court has found § 301(4) to be the most appropriate limitations period for constitutional torts specifically listed in the statute. *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1115 (D.C. Cir.1985) (defamation action); *McClam v. Barry,* 697 F.2d 366, 372–74

---

21. The concurring opinion argues that we are inconsistent in arguing that §§ 1981 and 1983 are sufficiently similar to require us to apply the personal injury statute of limitations to § 1981 claims, but sufficiently dissimilar to apply the District's general tort statute of limitations, rather than the intentional tort statute of limitations, to § 1981 claims. *See* concurring op. at 1438–39 n. 4. First of all, nothing is necessarily inconsistent about these two propositions. Our review of the Civil Rights Act leads us to believe that Congress intended § 1981 to be a personal injury remedy, but not solely for *intentional* personal injuries of the kind set out by § 301(4). Second, our argument on this point is in the alternative. *Even if* we accepted the

contention that the intentional tort statute of limitations should be applied to § 1983 claims—an issue that is not presented by this case—we would nonetheless conclude that the general tort statute of limitations should be applied to § 1981 claims. Moreover, as noted above, *see* text *supra* at 1427, were we presented with the question of which of the two personal injury statutes of limitations to apply to a § 1983 claim, we might well agree with the Second Circuit's suggestion that the general personal injury statute of limitations should be applied. *See Villante,* 786 F.2d at 520 n. 2. Such a conclusion would remove any possible inconsistency.

(D.C. Cir.1983) (false arrest).[22] The *McClam* opinion, however, was careful to distinguish *Macklin*. The § 1983 claim in *Macklin*, wrote Judge Bork, "was for racial discrimination, clearly not analogous to the torts listed in section 12–301(4)," 697 F.2d at 372, unlike the false arrest claim in *McClam*. This language clearly implies that the three-year period would be appropriate for § 1981 racial discrimination claims.

This court recently clarified its position on these issues by specifically holding that the three-year limitations period in § 301(8) applies both to most *Bivens* actions and to § 1985(3) actions. *Hobson v. Wilson*, 737 F.2d 1, 32 (D.C. Cir.1984). The *Hobson* panel rejected an analogy between the plaintiffs' cause of action for deprivation of First Amendment free speech rights, and the torts set out in § 301(4). The panel read *McClam* to adopt the one-year limitations period only for *Bivens* actions analogous to the common law actions mentioned in § 301(4). 737 F.2d at 32 n. 99. On remand the defendants once again claimed that the one-year period was the applicable provision. Their argument relied on the Supreme Court's intervening *Garcia* opinion and cases in other circuits that subsequently adopted intentional tort limitations periods for these actions. The district court rejected this approach. *Hobson v. Brennan*, 625 F.Supp. 459 (D.D.C. 1985). Judge Oberdorfer found that the three-year statute establishes the "general" personal injury statute of limitations period for the purposes of *Garcia*, and that the three-year provision better reflects the federal interests embodied in *Bivens* and § 1985(3) actions. He rejected the defendants' reliance on post-*Garcia* cases in other circuits that adopted intentional tort limitations periods, finding that those opinions misread *Garcia*. 625 F.Supp. at 467–68. As Judge Oberdorfer noted, the *Garcia* Court "easily could have specified that the 'one most appropriate statute of limitations' is that statute which is applicable to

intentional torts. The Court conspicuously failed to do so. Instead it concluded that § 1983 claims are best characterized as 'personal injury actions' * * *." *Id.* at 468.

■ Our decisions in *Macklin*, *McClam*, *Wilson* and *Brennan* strongly suggest that § 301(8)'s three-year limitations period applies to § 1981 actions in this circuit. These decisions, coupled with the language of § 1981 itself, clearly foreclose application of a one-year intentional tort limitations period to this case.

Applying the three-year statute of limitations for personal injuries to the facts of this case quickly leads to the conclusion that the district court erred in dismissing this suit as time-barred. Appellant alleges that she was discriminatorily terminated on April 1, 1984. Her suit was filed exactly three years and one day later, on April 2, 1984. Because April 1, 1984 was a Sunday, however, the limitations period was extended an extra day. *See* text *supra* at 1418 (limitations period extended under federal and state practice when last day falls on a Sunday). Consequently, appellant's suit, insofar as it alleged a discriminatory termination, was timely filed and the district court erred in concluding otherwise.

### III. SUMMARY JUDGMENT

Despite our conclusion that this suit was timely filed, we nonetheless affirm the dismissal of the suit on the merits. We find that appellant failed properly to support her opposition to appellee's motion for summary judgment. Because appellant failed to proffer evidentiary support for her allegations of racial discrimination, the district court properly dismissed the suit.

On a motion for summary judgment the evidence in the record must be viewed in the light most favorable to appellant, the nonmoving party below. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Appellee C & P of D.C. supported its mo-

---

**22.** If the *Garcia* opinion also applies to *Bivens* actions, this case-by-case approach will no long-

er be valid. *See Garcia*, 471 U.S. at 276, 105 S.Ct. at 1947.

tion for summary judgment with several affidavits from various supervisors employed by C&P of Virginia. *See* App., Vol. II at 38–50. It argued that appellant's claims were barred by the statute of limitations and that C&P of D.C. was a separate corporate entity that could not be held responsible for the acts of C&P of Virginia. Moreover, appellee argued that although the two corporations have a few high level executive officers in common, none of those officers played any role in supervising, training, or disciplining appellant. *See id.* at 41 (affidavit of Gloria C. Smith). Finally appellee argued that Ms. Banks had received all of the benefits to which she was entitled under the company's disability plan and therefore had not been subject to any discriminatory treatment. From this evidence, it appears clear that appellee carried its burden of showing the absence of a genuine issue of material fact as to whether appellant was discriminatorily terminated. *See Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). Thus the burden of production shifted to appellant, as the nonmoving party, to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 106 S.Ct. at 2553.

Appellant's opposition to the motion for summary judgment failed to support her allegations with evidence sufficient to create a contested issue of fact. Appellant opposed the motion by arguing first that the two companies were the same corporate entity and second that C&P of D.C. was liable under the "borrowed servant" doctrine. Appellant further supported her opposition to the motion for summary judgment with two letters from her employer and her own deposition. *See* Brief and Appendix for Appellant at 44–45; App., Vol. II at 51–57. We need not consider whether appellant's evidence was sufficient to create a contested issue of fact as to whether appellee could be held liable for the acts of C&P of Virginia. Even if such responsibility could be established, appellant simply failed to introduce specific evidence supporting her allegations of racial discrimination.

■ Appellant does not challenge the company's disability plan as discriminatory on its face. She must therefore demonstrate that the plan was discriminatory as applied. Neither of the letters offered into evidence, however, support her claim that the company discriminated against her on the basis of race.[23] The only possible evidentiary basis for appellant's allegations is her own deposition. Yet appellant explicitly conceded that she had received all of the benefits to which she was entitled under the disability plan. *See* Deposition of Gladys Banks at 22, 111. More important, she conceded that she knew of no other employees who had been kept on the company's payroll after the expiration of the one-year benefit plan. *See id.* at 111, 129, 132–34.[24] Thus, because appellant failed to

---

**23.** The first letter, written to Ms. Banks by C&P of D.C.'s employment office in 1983, merely notes the circumstances of appellant's departure from the company and confirms the company's refusal to rehire her. *See* Brief and Appendix for Appellant at 44 (letter of C. Carroll, III). The second letter, written to appellant from legal counsel to both C&P of D.C. and C&P of Virginia, provides even less support. In it counsel notes that under C&P of Virginia's collective bargaining agreement it may only recognize the Communications Workers of America, AFL–CIO as Ms. Banks' exclusive representative for purposes of consideration of any grievable issue. *Id.* at 45 (letter of Charles M. Carron).

**24.** Appellant's counsel questioned his client near the end of the deposition. In response to the

questions asked by her counsel she reiterated her allegations.

> BY MR. ANDERSON:
> Q Ms. Banks, is it your testimony that when other employees who were similarly situated as yourself, who were white and who were male, that when they were terminated, they received some kind of warning or notice that they would be terminated and you didn't?
> A Yes.
>
> \* \* \* \* \* \*
>
> Q Is it your testimony that C&P disregarded your employment rights when they terminated you, and that they didn't do this when they terminated white people and males?
> A Yes.

support the allegations of her complaint with any evidence of disparate treatment, summary judgment on the merits clearly would have been proper.

Rule 56(e) specifically provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or * * * otherwise * * *, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In this case appellant has done little more than rest on the allegations of her pleadings. We conclude that appellant failed to carry her burden of opposing appellee's motion for summary judgment.[25] Because we may affirm the entry of judgment by the district court on any ground that finds support in the record, we hold that entry of summary judgment on the merits was appropriate.

## IV. CONCLUSION

The Supreme Court's recent pronouncement in *Garcia* persuades us that the proper statute of limitations governing § 1981 claims brought in the District of Columbia is the three-year statute governing personal injury actions. Appellant's suit was timely filed under that statute and consequently should not have been dismissed on that ground. However, because appellant failed to carry her burden of producing specific evidentiary support for her allegations of racial discrimination, we affirm the judgment in favor of the defendant on the merits.

*Affirmed.*

BUCKLEY, Circuit Judge, concurring in the result:

For the reasons stated in Section III of the majority opinion, I agree that summary judgment was properly entered against appellant Gladys Banks because she failed to support her opposition to appellee's motion for summary judgment with evidence sufficient to create a contested issue of fact. I cannot agree, however, with the reasoning in Section II of the majority opinion.

As an initial matter, I believe that the majority's conclusion that *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), requires us to borrow the District of Columbia's three-year catch-all statute of limitations, D.C. Code § 12-301(8) (1981), for section 1981 actions brought in the District disregards the rationale of *Garcia*. If I agreed that *Garcia* applies in this case, I would join our three sister circuits that have decided the issue in the section 1983 context by ruling that *Garcia* requires us to borrow the local limitations period governing tort claims for intentional rather than negligent personal injury. Thus, in this case I would borrow the one-year limitations period for intentional personal injuries provided by D.C. Code § 12-301(4), rather than the three-year catch-all period of D.C. Code § 12-301(8).

---

Deposition of Gladys Banks at 190–91. Such conclusory allegations, however, are wholly insufficient to carry appellant's burden of production. Absent some evidentiary support for her allegations that the company discriminated against her, summary judgment for the defendant was clearly proper. We do not require a party opposing a motion for summary judgment to come forward with *admissible* evidence. Rather, we require only that a party opposing a motion for summary judgment come forward with evidence that "designate[s] 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, — U.S. —, —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

**25.** We note that defendant's motion for summary judgment was later characterized as concerning only the statute of limitations defense. *See* Original Record on Appeal at 18 (Defendant's Motion to Extend Deadline for Filing Motions for Summary Judgment on the Merits); *id.* at 20 (order of the district court dated August 29, 1984 granting motion). At the time that appellant responded to the motion for summary judgment, however, no such limitation had been placed upon the original motion for summary judgment. Thus it was incumbent upon appellant to rebut the defendant's claim that it was entitled to summary judgment and to proffer evidence to the court sufficient to support the allegations of the complaint.

More fundamentally, however, I do not believe that *Garcia*'s directive that courts adopt personal injury statutes in cases brought under 42 U.S.C. § 1983 (1982) applies at all in this case. Unlike the claim in *Garcia*, which was asserted under section 1983, appellant's claim is brought under 42 U.S.C. § 1981. The historical background and objectives of section 1981 are entirely different from those of section 1983, and therefore the reasons articulated in *Garcia* for borrowing personal injury limitations periods are not applicable in the section 1981 context. Accordingly, I conclude that *Garcia* does not prevent us from adopting the most analogous local statute of limitations, which in the District of Columbia is the one-year limitations period provided by the D.C. Human Rights Act, D.C. Code § 1-2544.

This conclusion is supported by the Supreme Court's pre-*Garcia* suggestion that section 1981 claims ordinarily should be governed by limitations periods applicable to causes of action arising under state civil rights laws. Because neither the rationale nor the holding of *Garcia* evince an intent to override this approach, I would hold that the Human Rights Act provides the applicable statute of limitations in this case even if I agreed that *Garcia* otherwise applies in the section 1981 context.

Because I conclude that appellant's section 1981 claim is subject to the one-year statute contained in the D.C. Human Rights Act, I believe that dismissal of appellant's claim was required for the additional reason that appellant's claim was time barred.

### I. *Garcia* AND ITS ANTECEDENTS

Prior to *Garcia*, there would have been no doubt as to the application of the D.C. Human Rights Act limitations period to appellant's section 1981 claim. Because federal law provides no period of limitations for actions brought under 42 U.S.C. § 1981, we are directed by 42 U.S.C. § 1988 to apply a state statute of limitations to section 1981 claims. The Supreme Court has instructed that in determining which state statute to apply, we must select the "most appropriate" limitations period provided by state law. *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). This means we must borrow "the most analogous state statute of limitations," *Board of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980), which is to say "the state law of limitations governing an analogous cause of action." *Id.* at 483–84, 100 S.Ct. at 1795.

In *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Supreme Court strongly suggested that, for purposes of section 1981, the "most analogous" state limitations period ordinarily is the statute of limitations applicable to actions brought under state civil rights laws. In *Runyon*, the Court confronted the question of which Virginia statute of limitations should govern section 1981 actions brought in that state. The Court approved of the trial court's selection of the Virginia personal injury statute, observing that:

At the time of this litigation Virginia had not enacted a statute that specifically governed civil rights suits. In the absence of such a specific statute, the District Court and the Court of Appeals held that the [Virginia personal injury statute] provides the relevant limitations period....

*Id.* at 180, 96 S.Ct. at 2599.

Before *Garcia*, it is clear that *Johnson, Tomanio,* and *Runyon* required application of the one-year limitations period of the D.C. Human Rights Act to section 1981 actions brought in the District of Columbia. The protections of the Act are in most respects broader than those afforded by section 1981. *Compare* D.C. Code §§ 1-2511 to 2532 *with* 42 U.S.C. § 1981. Thus, the Act provides the local cause of action "most analogous" to section 1981, *Board of Regents v. Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797, and contains a local statute of limitations "that specifically govern[s] civil rights suits." *Runyon v. McCrary*, 427 U.S. at 180, 96 S.Ct. at 2599.

To be sure, this court ruled in *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d

979, 994 (D.C. Cir.1973), that section 1981 actions in the District of Columbia are governed by the District's three-year catch-all statute of limitations, D.C.Code § 12–301(8). As the majority notes, however, maj. op. at 1419–20 and n. 9, *Macklin* was decided before the D.C. Human Rights Act was enacted, and this court has not had occasion to reconsider the *Macklin* holding in light of the Act. Indeed, it was not until the decision of the District of Columbia Court of Appeals in *Davis v. Potomac Electric Power Co.*, 449 A.2d 278, 280–81 (D.C. App.1982), that it was clear that the Act's one-year limitation on the filing of administrative complaints also applies to civil actions brought under the Act. Thus, it was only after *Davis* that section 1981 actions could be subjected to the Act's limitations period free of the concerns identified in *Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), relating to application of administrative statutes of limitations to federal civil rights actions.

In *Wilson v. Garcia*, 105 S.Ct. 1983, the Supreme Court substantially modified the analysis for determining which state limitations period to apply to section 1983 actions. Foremost among the matters to be decided in the instant case is the degree to which the rules enunciated in *Garcia* for section 1983 actions apply to actions arising under section 1981.

The plaintiff in *Garcia* alleged that he had been unlawfully arrested and beaten by a New Mexico state police officer. The district court ruled that section 1983 actions are most appropriately governed by limitations periods for liabilities created by statute. Because New Mexico law does not provide a separate limitations period for claims arising under statute, the district court applied instead New Mexico's catch-all statute of limitations. The Tenth Circuit reversed, holding that the action was governed by New Mexico's statute of limitations for personal injury claims. The Supreme Court was confronted with the question of whether one of these statutes or the New Mexico statute governing tort claims against state officials should be applied.

As an initial matter, the *Garcia* Court held that "the borrowing principle contained in § 1988 ... is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 1947. The Court thus rejected the practice that had arisen in many circuits of selecting the statute of limitations applicable to individual federal civil rights claims by comparing the federal claim to various state causes of action and choosing the limitations period governing the state cause of action most closely analogous to the federal claim. The Court observed that there are several undesirable consequences of applying different limitations periods to section 1983 actions brought in the same state. First, "there is 'uncertainty, confusion, and lack of uniformity in selecting the applicable statute of limitations in § 1983 suits.' " *Id.* at 1945 n. 25 (quoting Annot. 45 A.L.R.Fed. 548, 554 (1979)). Second, "scarce resources must be dissipated by useless litigation on collateral matters." *Id.* at 1947. Third, "the adoption of one analogy rather than another will often be somewhat arbitrary; in such a case, the losing party may 'infer that the choice of a limitations period in his case was result oriented, thereby undermining his belief that he has been dealt with fairly.' " *Id.* at 1945 n. 24 (quoting *Garcia v. Wilson*, 731 F.2d 640, 650 (10th Cir.1984)).

Having decided that only one state limitations period should govern section 1983 actions in each state, the Court turned to the question of which state statute should be applied. The Court agreed with the Tenth Circuit that "the tort action for recovery of damages for personal injuries is the best alternative available." *Garcia*, 105 S.Ct. at 1947. Two considerations led the Court to this conclusion. First, the nature of the section 1983 remedy suggested this result. The Court observed that "[t]he atrocities that concerned Congress in 1871 plainly sounded in tort.... Among the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to

be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract." *Id.* at 1948. Second, "[i]t is most unlikely that the period of limitations applicable to [personal injury] claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect." *Id.* at 1949.

## II. LIMITATIONS PERIOD SELECTION UNDER *Garcia*

As explained in Section III, *infra*, I do not agree with the majority that *Garcia* requires us to adopt a personal injury statute of limitations in this section 1981 case. Even if I agreed with the majority that *Garcia* applies, however, I would nevertheless adopt a different personal injury statute than that selected by the majority. The District of Columbia Code contains two statutes applicable to personal injury claims: D.C.Code § 12–301(4), which governs actions for "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment," and D.C.Code § 12–301(8), the District's catch-all statute of limitations, which governs all other personal injury actions.[1] Though there are a few intentional torts such as trespass, invasion of privacy, and interference with contract that are not covered by section 12–301(4), *Lawrence v. Acree*, 665 F.2d 1319, 1323 n. 5 (D.C. Cir. 1981), the basic distinction between the two provisions is that section 12–301(4) governs actions for intentional personal injury, while section 12–301(8) governs actions for negligent personal injury. *See Marusa v. District of Columbia*, 484 F.2d 828, 833 (D.C. Cir.1973).

This distinction is one that is observed in many states, and it has presented a limitations period selection problem apparently not anticipated by the Supreme Court in *Garcia*. Since *Garcia* was decided, three of our sister circuits have squarely confronted this problem in the section 1983 context, and all three circuits have held that the rationale of *Garcia* dictates selection of the local limitations period governing tort claims for intentional rather than negligent personal injury.

In *Gates v. Spinks*, 771 F.2d 916 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986), the court was confronted with a choice between Miss.Code Ann. § 15–1–35 (1972), which governs actions for "assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, and for libels," and Miss.Code Ann. § 15–1–49, Mississippi's catch-all statute, which governs "[a]ll actions for which no other period of limitation is prescribed." The court ruled that *Garcia* compels adoption of the statute governing intentional tort claims, observing that "[m]ost 1983 actions are predicated on intentional rather than negligent acts. Also ... 1983 was enacted for the purpose of redressing injuries from intentional misconduct. It follows that the 1983 action is more analogous to intentional torts governed by ... Miss. Code Ann. 15–1–35." *Gates v. Spinks*, 771 F.2d at 920.

Similarly, in *Mulligan v. Hazard*, 777 F.2d 340 (6th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986), the choice was between Ohio Rev. Code § 2305.11 (1981), which governs actions for "libel, slander, assault, battery, malicious prosecution, false imprisonment, or malpractice," and Ohio Rev. Code § 2305.10, which governs all other actions for "bodily injury or injuring personal property." Once again, the court chose to ap-

---

1. As the majority notes, maj. op. at 1427, neither party suggested that D.C.Code § 12–301(4) might govern this case. The question of which local statute governs section 1981 actions is nevertheless before us, and we therefore must consider all possibilities in deciding whether the statute relied upon by appellee, D.C.Code § 1–2544, or some other statute governs appellant's claim. If we were to conclude that D.C.Code § 12–301(4) governs section 1981 claims, we would then have to decide whether appellee's failure to rely on this statute prevents it from gaining the statute's protection. Because I conclude that appellee properly relied on D.C.Code § 1–2544, I need not reach this second question.

ply the statute governing the enumerated intentional torts because of *Garcia*'s teaching that "[t]he concern of Congress ... was with perpetuators of intentional tortious conduct. While both §§ 2305.10 and 2305.11 theoretically encompass intentional tort actions, § 2305.11, which applies to actions involving assaults, batteries and the like, more specifically encompasses the sorts of actions which concerned Congress as it ·enacted the civil rights statutes." *Mulligan v. Hazard,* 777 F.2d at 344.

Finally, in *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986), the choice was between Ala.Code § 6–2–34 (1977), which governs actions "for any trespass to person or liberty, such as false imprisonment or assault and battery," and Ala.Code § 6–2–39(a)(5), which governs actions "for any injury to the person or rights of another not arising from contract and not specifically enumerated...." In this case as well, the court found that *Garcia* compels adoption of the intentional personal injury statute. *See also Cook v. City of Minneapolis,* 617 F.Supp. 461, 464–65 (D.Minn.1985) ("a § 1983 claim should be characterized as a personal injury action along the lines of an intentional tort for statute of limitations purposes"); *Small v. City of Belfast,* 617 F.Supp. 1567, 1571–74 (D. Me.1985).

These decisions of the Fifth, Sixth and Eleventh Circuits are clearly relevant to the instant case. The choice we face, and even the wording of the D.C. statutes, bears a striking resemblance to the choices faced in these cases. As our sister circuits have emphasized, it was the analogy between *intentional* personal injury claims and civil rights actions that the Supreme Court found persuasive in *Garcia*. Particularly in view of the Supreme Court's decision last term that plaintiffs ordinarily must plead a state of mind more culpable than "mere negligence" in order to state a claim under section 1983, *Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986), it is apparent that negligent personal injury statutes are less analogous to federal civil rights claims

than intentional personal injury statutes. Accordingly, if *Garcia* governs this case, it requires us to borrow the local statute governing most intentional personal injury claims, D.C. Code § 12–301(4), rather than the catch-all statute of D.C.Code § 12–301(8). Claims governed by § 12–301(4) are extinguished if not brought within one year of the date that they accrue. Because appellant's claim was not brought within the prescribed period, application of *Garcia* to this case would require us to hold that the claim was properly dismissed as time barred (assuming that appellee's failure to specifically cite D.C. Code § 12–301(4) does not deprive it of that statute's protection).

The arguments advanced by the majority to avoid this conclusion are all unpersuasive. First, the majority asserts that the circuits are divided on the question of whether *Garcia* requires adoption of negligent or intentional personal injury statutes, citing the Tenth Circuit's decisions in *Mismash v. Murray City,* 730 F.2d 1366 (10th Cir.1984), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985), and *Hamilton v. City of Overland Park,* 730 F.2d 613 (10th Cir.1984), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985). The majority fails to note, however, that both of these cases were decided before the Supreme Court issued its opinion in *Garcia.* Thus, these cases were decided without benefit of *Garcia*'s emphasis on the intentional nature of the civil rights violations that prompted Congress to enact section 1983. Every circuit that has considered the issue since *Garcia* has concluded that the rationale of *Garcia* requires adoption of statutes governing intentional personal injury claims.

The majority next suggests that it might be appropriate to borrow negligent personal injury statutes for section 1983 actions because civil rights violations "are injuries 'to the individual rights of the *person,*'" maj. op. at 1427, quoting *Garcia,* 105 S.Ct. at 1948 (emphasis in majority opinion), and because such violations arguably should be treated as "dignitary torts." *Id.* The logic of this argument eludes me. Whether

characterized as "injuries to the individual rights of the person," "dignitary torts," or something else, the fact remains that violations of the civil rights laws generally are a form of intentional rather than negligent misconduct. *See Daniels v. Williams,* 106 S.Ct. at 664. *Garcia* accordingly teaches that civil rights actions are to be governed by statutes of limitations for intentional rather than negligent personal injury claims.

The majority argues that we should be guided by the Second Circuit's treatment of two New York statutes that are analogous to the District of Columbia's personal injury statutes: N.Y.Civ.Prac.Law § 215(3) (McKinney Supp.1986), which governs intentional personal injury claims, and N.Y. Civ. Prac. Law § 214(5), which governs other personal injury claims. Of the cases cited by the majority, however, only two even advert to the possible applicability of New York's intentional personal injury statute to section 1983 claims, *see Villante v. Department of Corrections of the City of New York,* 786 F.2d 516, 520 n. 2 (2d Cir.1986); *Okure v. Owens,* 625 F.Supp. 1568, 1570 (N.D.N.Y.1986), and in *Villante* the Second Circuit specifically declined to decide which statute applied because the claim in that case was timely under either of the statutes. It is not apparent to me why we should accord greater weight to cases from the Second Circuit, where the issue we confront has not been decided by the Court of Appeals, than to decisions from the Fifth, Sixth and Eleventh Circuits, where the issue we confront has been decided by the Courts of Appeals.

The majority further argues that we should be guided by this circuit's treatment of the two D.C. personal injury statutes in the context of actions brought under 42 U.S.C. § 1985(3) and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The cases cited by the majority are inapposite, however, for two reasons. First, these cases did not arise under section 1981 or 1983, and therefore do not speak to the question of which D.C. statute is most analogous to claims arising under these

sections. Second, all of the Court of Appeals decisions cited by the majority were decided before *Garcia,* and consequently were not informed by the Supreme Court's rationale in that case. Significantly, two of the Court of Appeals decisions applied the D.C. statute governing intentional personal injury claims even without benefit of the *Garcia* rationale. *McClam v. Barry,* 697 F.2d 366 (D.C. Cir.1983); *Doe v. United States Department of Justice,* 753 F.2d 1092 (D.C. Cir.1985). The majority's apparent conclusion that *Garcia* would prompt this court to overrule the holding of these two cases in favor of the holding of *Hobson v. Wilson,* 737 F.2d 1 (D.C. Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985) (applying the D.C. catch-all statute), is highly speculative and disregards the rationale of *Garcia* as interpreted by the Fifth, Sixth and Eleventh Circuits.

Finally, the majority asserts that even if the Fifth, Sixth and Eleventh Circuits are right that section 1983 claims should be governed by intentional personal injury statutes—an issue that we cannot decide because it is not before us—the instant case is properly subject to D.C. Code § 12–301(8) because it involves a claim under section 1981. This argument is in noticeable tension with the balance of the majority opinion, which stresses the similarities between sections 1981 and 1983 in order to explain why *Garcia* applies at all to section 1981 claims. As explained in the next section, I agree that sections 1981 and 1983 are very different, but conclude from this that we should not adopt a personal injury statute at all in this case. I would adopt instead the limitations period provided by the D.C. Human Rights Act, D.C. Code § 1–2544.

III. LIMITED APPLICABILITY OF *Garcia* TO THE INSTANT CASE

I agree with the majority that *Garcia* requires us to select in the case at bar "the one most appropriate" local statute of limitations to govern all section 1981 claims brought in the District of Columbia. I

disagree, however, with the majority's conclusion that *Garcia* compels us to adopt in this case as "the one most appropriate" limitations period D.C. Code § 12–301(8), the local statute governing most non-intentional personal injury claims.

I believe that *Garcia* must be interpreted in light of its facts, the legal issues presented, and the rationale articulated by the Court in deciding the case. The critical distinction between *Garcia* and this case is that *Garcia* involved an action under section 1983 rather than section 1981. The personal injury analogy relied on in *Garcia* is not persuasive in the section 1981 context, and I therefore conclude that *Garcia* does not require us to borrow a personal injury statute in section 1981 cases. This leaves us free to adopt the most analogous local statute of limitations, which in the District of Columbia is provided by the D.C. Human Rights Act.

This conclusion is buttressed by the fact that, prior to *Garcia*, the Supreme Court indicated that section 1981 cases ordinarily should be governed by statutes of limitations applicable to state civil rights actions. Because the rationale and holding of *Garcia* do not reveal an intent to discard this approach in section 1981 cases, I would hold that the Human Rights Act provides the applicable limitations period even if I agreed that *Garcia* otherwise governs this case. These two arguments are developed in greater detail in the sections that follow.

### A. *Differences Between Section 1981 and Section 1983*

The majority dismisses the differences between section 1981 and section 1983 as irrelevant because they were "each a product of the Reconstruction Era," and each was focused on the need to provide blacks with protection against the abridgement of

fundamental rights. Maj. op. at 1421–22. The attempt to minimize the differences between the two provisions will not withstand rigorous analysis. As explained in *Pender v. National Railroad Passenger Corp.*, 625 F.Supp. 252, 255 (D.D.C.1985), sections 1981 and 1983 "were passed at different times and seek to remedy different types of civil rights violations."

Section 1983 was enacted as part of the Civil Rights Act of 1871, also known as the Ku Klux Klan Act.[2] As the Supreme Court observed in *Garcia*, "[t]he specific historical catalyst for the Civil Rights Act of 1871 was the campaign of violence and deception in the South, fomented by the Ku Klux Klan, which was denying decent citizens their civil and political rights." *Garcia*, 105 S.Ct. at 1947. *See also* E. Gressman, *The Unhappy History of Civil Rights Legislation*, 50 Mich.L.Rev. 1323, 1334 (1952). The legislative history of this statute establishes that Congress wanted to stop the murders, lynchings, and whippings perpetrated by lawless elements in the South, as well as eliminate "the refuge that local authorities extended to the authors of these outrageous incidents." *Garcia*, 105 S.Ct. at 1947.

This violent background to section 1983 is critical to the Court's decision in *Garcia* to apply personal injury limitations periods to section 1983 claims. The Court observed that "[t]he atrocities that concerned Congress in 1871 plainly sounded in tort." *Id.* at 1948. Reasoning from this premise, the Court concluded that "[a]mong the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract." *Id.*

---

**2.** 42 U.S.C. § 1983 (1982) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The majority in the instant case fails to acknowledge that *Garcia*'s selection of personal injury limitations periods as the "best alternative available" for section 1983 actions is bottomed on the turmoil that section 1983 was intended to arrest. Rather, the majority admits to "no difference between the central objectives of § 1981 and § 1983" because one provision of section 1981 "broadly protects the right of all persons 'to the full and equal benefit of all laws and proceedings for the security of persons and property.'" Maj. op. at 1422 (quoting 42 U.S.C. § 1981). The majority thus relies on the superficial analogy between sections 1981 and 1983, failing to recognize the significant differences in the nature of the rights protected and the ills sought to be remedied by the two provisions.

In contrast to section 1983, section 1981 was enacted as part of the Civil Rights Act of 1866.[3] It was intended to implement the newly adopted Thirteenth Amendment, which outlawed slavery. As the text of section 1981 and early cases suggest, the 1866 Civil Rights Act was designed to ensure equal rights before the law for all citizens. In particular, the law guaranteed the right of recently emancipated citizens to enter into contracts, hold property, invoke the protections of the courts, and enjoy the full and equal benefit of the laws. *See* E. Gressman, *supra,* 50 Mich.L.Rev. at 1326.

The language and legislative history of the Civil Rights Act of 1866 demonstrate that while the Act was designed to eliminate the racial injustices of the early post-war era, it was in no significant respect a response to violence directed against blacks. The principal problem addressed by section 1981 was the refusal of the recently defeated southern states to accord equal legal protection to blacks. A related problem was that of private discrimination against blacks. Though there was some evidence before Congress that this private discrimination in the early post-war era included occasional violence directed against blacks, *see Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 427–28, 88 S.Ct. 2186, 2197, 20 L.Ed.2d 1189 (1968), a fair reading of the legislative history indicates that Congress' deliberations were not significantly affected by this evidence. *See, e.g.,* Cong. Globe, 39th Cong., 1st Sess., 474–75 (remarks of Sen. Trumbull); 477–81 (Sen. Saulsbury); 503–4 (Sen. Howard); 530 (Sen. Johnson); 1151–52 (Rep. Thayer); 1156–57 (Rep. Thornton); 1117–18 (Rep. Wilson); 1265 (Rep. Broomall); 1290–93 (Rep. Bingham); 1832–37 (Rep. Lawrence). It is therefore impossible to conclude that Congress' decision to enact the 1866 Civil Rights Act was in any substantial way motivated by evidence of racial violence. The legislative history of the 1866 Act stands in marked contrast to that of the Civil Rights Act of 1871, which clearly demonstrates that the 1871 Congress was animated by its outrage over the depredations of the Ku Klux Klan and other lawless elements in the South. *See, e.g.,* Cong. Globe 42d Cong., 1st Sess., 374 (remarks of Rep. Lowe); 321 (Rep. Stoughton); 332 (Rep. Hoar); 369–70 (Rep. Monroe); 389 (Rep. Elliott); 412–13 (Rep. E. Roberts); 428 (Rep. Beatty); 436–40 (Rep. Cobb); 516–17 (Rep. Shellabarger); 606 (Sen. Pool); 654 (Sen. Osborne); 691 (Sen. Edmunds).[4]

---

**3.** 42 U.S.C. § 1981 (1982) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**4.** The majority does not dispute that the origin and purposes of sections 1981 and 1983 are quite different. The majority observes:

Like § 1983, § 1981 is best characterized as a remedy for personal injury torts, ... but unlike § 1983, it was *not* designed to provide a remedy for intentional torts such as assaults or batteries. Rather, § 1981 primarily ensures equal rights to make and enforce contracts, equal access to judicial process, and equal rights under law.

Maj. op. at 1427. (emphasis in the original). The majority relies on these differences in order

Because section 1981 was not enacted against the violent background that was "[t]he specific historical catalyst for the Civil Rights Act of 1871," *Garcia,* 105 S.Ct. at 1947, it was held in *Pender v. National Railroad Passenger Corp.,* 625 F.Supp. at 254–55, that *Garcia* does not compel application of one of the District of Columbia's personal injury limitations periods to section 1981 claims. The court reasoned in *Pender* that "[u]nlike § 1983, the remedies established by § 1981 are not 'more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract.'" *Id.* at 255 (quoting *Garcia,* 105 S.Ct. at 1948). Rather, the court determined that:

> The causes of action that may be brought under § 1981 are most analogous to breach of contract actions, employment grievances, and complaints for denial of the right to use public accommodations. The most appropriate local cause of action from which to adopt a single limitations period for these actions is the District of Columbia Human Rights Act.

*Id.* Views consistent with *Pender* are expressed in *Goodman v. Lukens Steel Co.,* 777 F.2d 113, 130–38 (3d Cir.1985) (Garth, J., dissenting). I believe that *Pender* and Judge Garth's dissent in *Goodman* represent a sound application of the *Garcia* rationale to the entirely different circumstances presented by section 1981. Accord-

ingly, I would hold that the instant case is governed by the Human Rights Act statute of limitations rather than a personal injury limitations period.

B. *Availability of a Local Limitations Period for Civil Rights Actions*

Even if I were to conclude that, as a general matter, *Garcia* applies equally to claims brought under sections 1981 and 1983, I would nevertheless decline to adopt a personal injury statute in this case because the District of Columbia Human Rights Act provides a local cause of action, governed by a local statute of limitations, for civil rights violations closely analogous to those prohibited by section 1981. It is important to recall in this connection the Supreme Court's suggestion in *Runyon v. McCrary,* 427 U.S. at 180, 96 S.Ct. at 2599, that, for claims arising under section 1981, if a state has "not enacted a statute that specifically govern[s] civil rights suits," other state limitations periods will be considered. Thus, we confront the question of whether *Garcia*—a section 1983 case—overrides the approach suggested by *Runyon* for section 1981 cases, or is to be interpreted consistently with that approach. In other words, the question is whether the analogy between section 1981 and state civil rights statutes like the D.C. Human Rights Act is so strong that limitations periods governing state civil rights claims should be viewed as presenting an exception to the broad rule of *Garcia.* [5]

to avoid three post-*Garcia* Court of Appeals decisions indicating that section 1983 claims are governed by the local limitations period for intentional rather than negligent personal injury claims. See Section II, *supra.*

This analysis is at odds with the remainder of the majority opinion, which stresses the similarities between sections 1981 and 1983 in order to explain why *Garcia* applies at all in the section 1981 context. Essentially, the majority contends that sections 1981 and 1983 are sufficiently similar to require us to apply a personal injury statute of limitations to section 1981 claims, but sufficiently dissimilar to permit us to ignore the rationale of *Garcia* insofar as it compels adoption of limitations periods for intentional rather than negligent personal injury claims. I believe that a more consistent approach would be to disregard in the section 1981 context *Garcia's* preference for personal

injury statutes and apply instead the "one most appropriate" local law of limitations—in this case, the D.C. Human Rights Act.

5. The majority states that under my reasoning "courts may remain free to consider *any* potentially analogous state causes of action for which New Mexico ... had no special limitations period." Maj. op. at 1425 (emphasis in the original). This argument mischaracterizes my analysis and completely ignores my reliance on *Runyon.* I would hold only that the approach suggested by *Runyon* survives *Garcia.* The exception to *Garcia* that I advocate is a narrow one, extending only to state limitations periods for civil rights actions. I do not mean to suggest that other state limitations periods can or must be considered if there was no analogue under New Mexico law.

As explained below, my analysis of the rationale of *Garcia* leads me to conclude that *Garcia* does not override *Runyon*, and that it therefore does not require adoption of personal injury statutes of limitations in section 1981 cases when limitations periods applicable to closely analogous state civil rights actions are also available.

The Supreme Court in *Garcia* identified three principal reasons for holding that section 1983 claims should be subject to the local limitations period governing personal injury actions. First, the Court explained that the process of analogizing individual federal claims to local causes of action had led to unfairness, uncertainty, and litigation over collateral matters. Second, the Court reasoned that it is appropriate to borrow personal injury limitations periods because of the strong similarities between claims brought under section 1983 and personal injury claims. Third, the Court stated that adoption of personal injury limitations periods eliminates the risk of state discrimination against federal claims. When carefully scrutinized, it is apparent that none of these justifications for the broad rule of *Garcia* compels rejection of the *Runyon* approach in section 1981 cases when there is a state cause of action closely analogous to that provided by section 1981.

In order to remedy the first problem identified by the Supreme Court, that of unfairness and uncertainty, *Garcia* instructs the courts "to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Garcia*, 105 S.Ct. at 1947. This directive would not be violated by applying *Garcia* consistently with *Runyon*. If *Garcia* is interpreted as requiring application of personal injury limitations statutes to section 1981 claims in all states except those having limitations periods for closely analogous state civil

rights actions, there would nevertheless be only one statute applicable to all federal civil rights actions in each state. There would be no problem of unfairness, uncertainty, or litigation over collateral matters. The first rationale articulated by the Court in *Garcia* therefore does not require us to prefer personal injury limitations periods to periods governing state civil rights claims.

The Court's second rationale provides no better support for the conclusion that a D.C. personal injury statute of limitations should be applied in this case. It is indeed true that, in view of the historical background to the Civil Rights Act of 1871, the remedy provided by section 1983 is similar to the remedy provided by state causes of action for personal injury. It does not follow from this, however, that the remedy provided by section 1981 is more analogous to personal injury claims than to state civil rights claims. As explained in Section III(A), *supra*, the protections afforded by section 1981 are very different from those afforded by section 1983, and therefore the personal injury analogy relied upon in *Garcia* is not persuasive in the section 1981 context. In addition, it is significant that the only limitations periods considered by the Supreme Court in *Garcia* were the New Mexico periods for personal injuries, torts committed by state officials, and causes of action not otherwise provided for. *Garcia*, 105 S.Ct. at 1940–41. Presented with these choices, the Court ruled that "[a]mong the potential analogies" Congress would have considered the remedies established in the Civil Rights Act to be most analogous to tort claims for personal injury.[6] *Id.* at 1948. As a state civil rights statute was not "[a]mong the potential analogies" available in *Garcia*, that case does not preclude consideration of state civil rights limitations periods in cases aris-

**6.** The majority argues that the Supreme Court's discussion and rejection of limitations periods for statutory claims—a type of limitations period not provided by New Mexico law—indicates that the Court "was considering all of the potential characterizations for § 1983 claims in any state." Maj. op. at 1426. It is clear to me that this discussion was a response to the district

court's ruling that section 1983 claims ordinarily should be characterized as claims arising under statute. Unlike the majority, I am unable to discern from this discussion or any other portion of the *Garcia* decision an intent to preclude adoption of statutes of limitations governing state civil rights actions closely analogous to section 1981.

ing under section 1981.[7] It follows that the similarities identified in *Garcia* between section 1983 and personal injury claims do not require that section 1981 actions be governed by personal injury limitations periods rather than limitations periods applicable to state civil rights claims.

The third consideration cited by the Supreme Court in favor of borrowing personal injury limitations statutes likewise fails to provide a basis for not applying appropriate state civil rights limitations periods. The Court suggests that states are unlikely to fix personal injury limitations periods in such a way as to discriminate against federal civil rights claims. *Id.* at 1949. This is no doubt true, but it does not follow from this that there is reason to believe that states *are* likely to fix limitations periods applicable to state civil rights actions in such a way as to discriminate against federal claims. I am not prepared to assume that a state that creates a private right of action for civil rights violations acts in bad faith and with the intention of circumscribing the remedies available to victims of discrimination. To the contrary, it is apparent that those states that have created such a right of action have acted out of solicitude for the victims of discrimination.[8]

It must be emphasized that the D.C. Human Rights Act is a legitimate piece of local antidiscrimination legislation. It is not a statute like those enacted by some states that purports to create a limitations period for federal claims only. There is clearly a greater risk that such statutes will discriminate against federal claims than will limitations periods that apply to state causes of action. *See, e.g., Johnson v. Davis,* 582 F.2d 1316 (4th Cir.1978). Moreover, the Supreme Court has emphasized with respect to state limitations periods that "courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.'" *Burnett v. Grattan,* 468 U.S. at 48, 104 S.Ct. at 2929 (quoting 42 U.S.C. § 1988). Thus, if any limitations period applicable to state civil rights actions could be shown to discriminate against federal claims, it could simply be disregarded in favor of a statute of limitations more consistent with federal interests. *See id.* at 53, 104 S.Ct. at 2931.

It is important to observe in this connection that the one-year limitations period provided by the D.C. Human Rights Act is in no way inconsistent with the federal interests embodied in section 1981. The majority relies on one sentence from *Davis v. Potomac Electric Power Co.,* 449 A.2d 278 (D.C.App.1982), in order to conclude that there is such an inconsistency. Maj. op. at 1423. In reality, the two assertedly inconsistent local objectives identified in *Davis* —"the desire to promote rapid compliance with the Act," and avoiding problems associated with "the impermanent na-

---

7. It is arguable that were the Supreme Court to revisit *Garcia* in a state with a statute similar to the D.C. Human Rights Act, it might conclude that the analogy between section 1983 and the local civil rights law is sufficiently strong to permit adoption of the state civil rights statute of limitations in the section 1983 context. Because this issue is not presented by the instant case, I need not speculate on how the Supreme Court would decide the issue.

8. The majority's refusal to apply the D.C. Human Rights Act's statute of limitations in this case derives no support from the failure of courts in New York to apply the statute governing that state's Human Rights Law to section 1983 claims. It should be observed at the outset that the New York Human Rights Law sets no limitation on actions brought under the Law, and such actions consequently have been held subject to New York's three-year statute for lia-

bilities arising under statute. *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86, 93 (Ct. App.1983). Because this three-year period is identical to the three-year statute of limitations that has been applied to section 1983 claims in New York both before and after *Garcia, see Villante v. Department of Corrections of the City of New York,* 786 F.2d 516, 520 n. 2 (2d Cir. 1986); *Okure v. Ownes,* 625 F.Supp. 1568, 1570 (N.D.N.Y.1986), the failure of litigants to rely on the Human Rights Law limitations period is hardly a mystery.

More importantly, all of the cases cited by the majority arose under section 1983 rather than section 1981. Thus, none of the cases relied upon by the majority even considered the question of whether the Human Rights Law might provide the applicable statute of limitations for section 1981 claims in New York.

ture of the evidence upon which discrimination claims are based," *Davis*, 449 A.2d at 281—are the types of objectives that *all* statutes of limitations, federal and state, seek to promote.

To the extent that the majority argues that repose is inconsistent with the policy of the federal civil rights laws, maj. op. at 1423, it ignores recent Supreme Court decisions establishing that repose is an important objective of these laws. *Board of Regents v. Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797; *Garcia*, 105 S.Ct. at 1944–45. As stated in *Garcia*, "[a] federal cause of action 'brought at any distance of time' would be 'utterly repugnant to the genius of our laws.'" *Id.* at 1944 (quoting *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 341, 2 L.Ed. 297 (1805)). *Garcia* further explained that "[b]y adopting the statute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Id.* at 1945. That the balance struck in the D.C. Human Rights Act is in no way inconsistent with federal interests is demonstrated by the fact that a number of courts applying *Garcia* in other jurisdictions have borrowed one-year state limitations periods for federal civil rights actions. *See Mulligan v. Hazard*, 777 F.2d 340, 344 (6th Cir.1985), *cert. denied*, ⸺ U.S. ⸺, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); *Gates v. Spinks*, 771 F.2d 916 (5th Cir.1985), *cert. denied*, ⸺ U.S. ⸺, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986); *Altair Corp. v. Pesquera De Busquets*, 769 F.2d 30 (1st Cir.1985); *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir.1985). *Cf.* 42 U.S.C. § 1986 (actions against persons who neglect to prevent certain civil rights violations are subject to a one-year limitations period).

The D.C. Human Rights Act closely tracks the objectives of section 1981 in its assault on discriminatory practices based not only on race and sex, but on education, age, and a host of other conditions.[9] It is precisely such legislation that *Runyon v. McCrary* instructs us to look to in borrowing local limitations periods under section 1981, and, as explained above, I am satisfied that *Garcia* does not override *Runyon* in this respect. Moreover, because the D.C. statute is so closely analogous to section 1981, applying a limitations period other than that governing claims under the Human Rights Act will lead to the unseemly problem of forum shopping as litigants shift their discrimination claims to federal court in order to take advantage of the more generous limitations period adopted by the majority. It has long been recognized that such a result is contrary to the genius of federal law in the diversity context, *see, e.g., Guaranty Trust v. York*, 326 U.S. 99, 107–12, 65 S.Ct. 1464, 1469–71, 89 L.Ed. 2079 (1945), and the borrowing provision of section 1988 clearly rests on similar principles. The policies of section 1988 can best be effectuated by applying the Human Rights Act's one-year statute to all section 1981 claims brought in the District of Columbia, and I would so hold in this case.

## IV. CONCLUSION

In view of the foregoing analysis, I conclude that, properly construed, *Garcia* does not require this court to ignore the local statute of limitations applicable to civil rights actions in favor of one of the District of Columbia's personal injury statutes.

---

**9.** The majority argues that it would be inappropriate to borrow the D.C. Human Rights Act statute of limitations because that Act does not provide a remedy for all types of discrimination actionable under section 1981. This argument ignores the fact that we are required only to apply the "most analogous" local statute, not an identical one. The vast majority of claims that may be asserted under section 1981 are also actionable under the Human Rights Act, including claims regarding discrimination in employ- ment, housing, public accommodations, and education. That it is possible to imagine a small number of potential section 1981 claims that could not be brought under the Human Rights Act does not establish that it would be inappropriate to apply the Act's one-year limitations period. Indeed, there is a far larger number of potential section 1981 claims that, if asserted under D.C. law, would be subject to a statute of limitations different from the one that the majority has chosen to adopt.

Because *Garcia*'s selection of personal injury limitations periods is inapposite in the section 1981 context, and because of the strong analogy between causes of action under the D.C. Human Rights Act and section 1981 claims, I would adopt the Human Rights Act's one-year limitations period in this case. Moreover, even if I believed that *Garcia* requires us to borrow a personal injury statute, I would adhere to the decisions of our sister circuits and borrow the one-year statute governing most intentional personal injury claims rather than the three-year statute governing negligent personal injury claims. For all of these reasons, I respectfully disagree with the majority's conclusion that appellant's section 1981 claim was not time barred.